UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
PAUL KACOCHA, on behalf of himself
and all others similarly situated

            Plaintiff,

         -against-

NESTLÉ PURINA PETCARE
COMPANY,

           Defendant.
------------------------------------------------------x

Civil Action No. 15-cv-5489

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Paul Kacocha ("Kacocha"), brings this action on his own behalf, and on behalf of a class of similarly situated consumers, based upon his own personal knowledge as to himself and his own acts, and upon information and belief and the investigation of his counsel as to all other matters, and alleges as follows:

## NATURE OF ACTION

1. Dog lovers go to extremes to provide for and feed their dogs. As consumers, they are increasingly concerned with feeding their dogs high-quality, wholesome, human-quality ingredients and are willing to pay a premium price to do so. As a result, certain disreputable pet food manufacturers and marketers are targeting these ingredient-focused consumers, falsely touting their products as consisting of expensive, premium, human-quality ingredients like bacon, when, in reality, the main ingredients are cheap non-meat fillers like ground wheat, wheat flour, or ground yellow corn. Unfortunately for consumers, defendant Nestlé Purina Petcare Company ("Nestlé") falls into that disreputable lot. Nestlé manufactures and deceptively and falsely markets its popular "Beggin'" dog treat products as being largely comprised of real bacon, when in reality, bacon is just a minor ingredient, in order to increase its profits at the

expense of unknowing consumers. In fact, the Beggin' dog treat products are cut, shaped, colored, and striated to look like real bacon, and they are flavored to smell like real bacon. The product name, "Beggin,'" is designed to, and does sound virtually the same as "Bacon" when spoken. The deception is complete.

2. Defendant's misleading representations and omissions are conveyed to the consuming public uniformly and through a variety of media, including its omnipresent television advertisements, its websites and online promotional materials, and most importantly at the point of purchase, where Defendant ensures that the false claims are prominently made on the Products' packaging and labeling and pictures of giant bacon strips besot the packaging. Defendant's uniform labeling and marketing practices deceive consumers into purchasing the Beggin' dog treat products in order to obtain the advertised ingredients -- most notably, real bacon -- that Defendant knows the products contain only in miniscule amounts. And once they open the Beggin' packages, the product actually looks and smells like real bacon.

3. As a result of Defendant's deceptive representations and material omissions, consumers -- including Plaintiff and members of the proposed class -- have purchased the Beggin' dog treat products, which they otherwise would not have purchased, and in any event, are more expensive than equivalent products.

4. Plaintiff brings this class action on behalf of himself and all other similarly situated consumers who purchased Beggin' dog treat products in the State of New York to recover monetary damages they suffered as a result of this false and misleading advertising.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d). The matter in controversy, exclusive of interest and

costs, exceeds the sum of $5,000,000.00, is a class action in which there are in excess of 100 class members, and many members of the class are citizens of a state different from Defendant. 28 U.S.C. §1332(d)(2)(A).

6. Venue is proper in this District because Nestlé does business in this District, and many of the acts giving rise to this action occurred in this District.

## CHOICE OF LAW

7. New York law governs the state law claims asserted herein by Plaintiff and the New York class he seeks to represent.

## PARTIES

8. Plaintiff Paul Kacocha is a natural person of full age of majority who is domiciled and resides in Dutchess County in the State of New York. For the past several years, Plaintiff purchased Beggin' Strips Bacon and Beggin' Strips Bacon and Cheese dog treat products for his West Highland terrier, Sophie, his current dog, and her predecessor, Tyler, another West Highland terrier (now deceased). Plaintiff purchased several bags of these dog treat products per year at pet stores, including Animal Kingdom, in Brewster, New York, Petco, in Poughkeepsie, New York, and Pet Supplies Plus, in Fishkill, New York.

9. Over the years, Plaintiff has been exposed to and has seen Defendant's representations by reading the labels of the Beggin' dog treat products, as well as by having viewed some of Defendant's television commercials for the products. Based on the representations contained on the Beggin' product packaging and on the advertisements for the Beggin' dog treat products Plaintiff had viewed, Plaintiff was led to believe, and believed, that the Beggin' dog treat products he purchased contained real bacon as a primary ingredient. In fact, the Beggin' Strips products Plaintiff purchased are cut, shaped, and colored to replicate real

bacon strips, and the strips are flavored to smell like real bacon too.  Plaintiff has since learned that the Beggin' dog treat products contain only a very minimal amount of real bacon – with, for instance, bacon being the tenth most prominent ingredient and bacon fat being the twelfth most prominent ingredient (by weight) in Defendant's Beggin' Strips Original Bacon Flavor dog treat product.  Had Plaintiff Kacocha known the truth about Defendant's misrepresentations and omissions about the ingredients contained in those products, Plaintiff would not have purchased the Beggin' dog treat products that he did, and in any event, he would not have paid the premium price he paid.  As a result, Plaintiff Kacocha has suffered injury in fact and lost money.

10. Defendant Nestlé Purina Petcare Company is a Missouri corporation, with its headquarters located at 901 Chouteau Avenue, St. Louis, Missouri.  It manufactures, markets, and sells pet foods, pet treats, and related products in the State of New York, nationwide, and worldwide.  Nestlé Purina Petcare Company is a subsidiary of Nestlé S.A., the largest food company in the world, with nearly $100 billion in yearly sales.  Nestlé Purina Petcare Company is the largest pet food company in the United States, having a 33% market share.

## FACTUAL ALLEGATIONS

11. Defendant's Beggin' dog treat products are premium-priced dog treats available in Beggin' Strips Bacon Flavor; Beggin' Strips Bacon & Cheese Flavors;  Beggin' Strips Bacon & Beef Flavors; Beggin' Strips Applewood Smoked Flavor; Beggin' Thick Cut Hickory Smoked Flavor; Beggin' Thick Cut Maple Flavor; Beggin' Little Bacon Flavor; Beggin' Collisions Bacon & BBQ Pork Flavors; Beggin' Collisions Bacon, Egg & Cheese Flavors; Beggin' Collisions Bacon & Peanut Butter Flavors; Beggin' Collisions Bacon & Ranch Flavors; and Beggin' Party Poppers Bacon and Cheese Flavors.  *See* www.purina.com/products/Beggin.  Defendant, on its

Purina products webpage for the Beggin' product line, lists, under the heading "Ingredients & Nutrients," "Made with real bacon."  No other ingredients or nutrients are specified.  *See id.*

12. Defendant's Beggin' dog treat products are sold in New York and nationwide at leading supermarkets, pet stores, superstores, convenience stores, and other retailers, including, among others, Walmart Stores, Petco, Target Stores, and PetSmart.  Beggin' dog treat products are also sold online directly by Amazon.com, Walmart.com; Target.com, Walgreens.com, and by many other online sellers.

13. Defendant aggressively markets its Beggin' dog treat product line, and engages in a long-running, popular, national television commercial campaign featuring comical videos of dogs enthusiastically musing about their strong desire for bacon and Defendant's Beggin' dog treat products.  For example, Defendant's television commercials for its Beggin' Strips dog treat product plainly, but falsely, suggest that the product is made of bacon and that the prime ingredient is bacon.  Actually, however, the real main ingredients are non-meat fillers – ground wheat, corn gluten meal, wheat flour, water, ground yellow corn, sugar, glycerin, soybean meal, and hydrogenated corn syrup, plus at least five artificial preservatives.  Bacon and bacon fat are present in tiny quantities – i.e., in the Beggin' Strips Original Bacon Flavor product, they are the tenth and twelfth ingredients (by weight) of this highly-processed dog food.

14. Yet the television commercials for Beggin' Strips falsely present the product as consisting primarily of bacon.  For instance, one famous television ad, which Plaintiff has viewed, bears the tagline "There's No Time Like Beggin' Time."  The commercial has aired over 6,700 times on national and spot television, and is currently being aired.  *See* www.ispot.tv/ad7IFX/purina-beggin-strips-beggin-time.  The commercial begins with an adult female opening a bag of Beggin' Strips.  A visualization of fumes emanates from the bag which

5

waft to the family dog resting on the floor, head down.  As soon as the fumes reach the dog, he jumps to attention, with a thought bubble emanating from his right ear.  The thought bubble contains a picture of four strips of crispy bacon on a plate.  The dog starts shouting (by a voiceover): "Bacon, gotta get that bacon!" before barking and running downstairs, seeking out the source of the fumes.  The voiceover frenetically continues: "Smoky bacon!  Crispy bacon!  Tasty bacon!" as the dog races through the house, careening into a pile of alphabet blocks a small girl is playing with in the family room.  The dog causes the tower of blocks to spin around until it stops and spells out "BACON" to the delight of the clapping child.  The dog runs into the living room, where the man of the house is napping in a recliner.  Screaming "Where is it?  Where's the bacon,?"  (an ironic, though unintended metaphor for this entire case), the dog jumps on the napping man, waking him up all flustered.  Another male voiceover, emanating from the television in the living room as a news broadcaster, states: "Bacon popular.  Story at 11."  The dog bursts into the kitchen, shouting "Yummy, crunchy, BACON! BACON! BACON!"  After looking at an empty frying pan on the stovetop, the dog cries: "There, in that bag" as he sees the woman of the household holding the bag of Beggin' Strips.  She wooingly entreats: "Who wants a Beggin' Strip?"  The dog screams: "Me!  I'd get it myself but I don't have thumbs.  Yum! Yum! Yum! IT'S BEGGIN'! Mmm, I love you!"  The woman hands the dog a strip that looks just like a bacon strip.  The thankful dog jumps on her as she kneels, and he kisses her face. Another male voiceover states: "Beggin' Strips, Made with real bacon.  There's no time like Beggin' time!," as a frying pan of oil sizzles in the background.  Throughout the commercial, when the word "beggin'" is used, it sounds just like "bacon."

    15.  This well-known television commercial, and others used by Defendant to market its Beggin' dog treat products, falsely portray the treats as being made largely of real bacon.  Yet,

6

as alleged above, "real bacon" is only a very minor ingredient in the product, which is predominantly made out of processed wheat, corn, sugar, glycerin, water, and soy. "Bacon" and "Bacon Fat" are the tenth and twelfth ingredients in the product, by weight. Moreover, to the extent that "bacon" is used, even in the minute quantities listed, it is unclear what meat product or other ingredients comprise the "bacon" and by what process this ingredient is deemed to be "bacon."

16.     Significantly, the product packaging for Beggin'Strips contains and reinforces the same false and misleading claim that the product consists largely of real bacon.

17.     The Beggin' Strips packaging contains a "Principal Display Panel" ("PDP"). A Principal Display Panel is "the part of a label that is most likely to be displayed, presented, shown, or examined under customary conditions of display for retail sale." 21 C.F.R. §101.1. Defendant's false and misleading message is presented on these PDPs which all consumers see when they pick up the Beggin' Strips package to buy or use. For example, the 25 ounce bag of Beggin' Strips Original Bacon Flavor shows on the PDP a salivating dog, licking his chops in the lower left. The upper half of the package states "Purina" in moderate size type on the upper left, with "Beggin' Strips" proclaimed in large, bold type at the center, with the words "Brand Dog Snack" in very small type below. Immediately below that, the weight of the package is set forth in large bold type – in this example, "25 oz." Below the 25 oz., the phrase "made with real bacon!" is prominently set forth. Below that is a large image of a crispy piece of bacon splayed across nearly one-half the package. Nestled just below to the bottom right of the crispy piece of bacon is an icon of a small black frying pan containing two sizzling pieces of bacon. In a purple ball atop which the bacon-filled frying pan rests, "bacon flavor" is boldly displayed. Just below

the bottom circumference of the ball is the text "AHH, LOVE AT FIRST SNIFF!"  Finally, in the bottom right corner of the packaging, the net weight of the product is set forth.

18.   The back packaging of the Beggin' Strips is equally misleading.  The top half features the image of a crazed, outstretched, salivating dog chasing what looks like a giant crispy strip of bacon.  Immediately below that image, in huge bold type, is the caption "BacoNology 101."  Below "BacoNology 101" on the left of the packaging is a box containing the following text: "There's No Time Like Beggin' Time.  Beggin.com."  To the right of the box is the explanation of the meaning of the banner "BacoNology 101."  Bullet point 1 is "EXCITEMENT = BEGGIN' X SPEED OF SMELL$^2$."  Bullet point 2 is "WHAT HAPPENS WHEN AN IRRESISTIBLE AROMA MEETS AN IMMOVABLE APPETITE? **BEGGIN' TIME!**"  Bullet point 3 states: "AN OBJECT IN MOTION STAYS IN MOTION. CHECK OUT MY TAIL!"  To the right of the bullet points is the icon of the black frying pan containing two crispy strips of bacon.  At the very right corner of the back packaging, below a set of instructions to consumers to "Feed as a treat to your adult dog," is an oval containing text stating: "Baconologists standing by," followed by the Purina logo and the purina.com website address, the Purina call center phone number, and its hours of operation.  The bottom left corner of the back packaging contains a "Guaranteed Analysis" of the protein, fat, and fiber content of the product, plus a list of ingredients, with the ingredients listed in decreasing order of predominance by weight.  United States Food and Drug Administration ("FDA") regulations require food product ingredients to be listed in descending order of predominance, by weight, in nutrition labeling, 21 C.F.R. §101.4(a).

19.   The ingredients are listed as follows:  (1) ground wheat; (2) corn gluten meal; (3) wheat flour; (4) water; (5) ground yellow corn; (6) sugar; (7) glycerin; (8) soybean meal; (9) hydrogenated corn syrup; (10) bacon (preserved with sodium nitrite): (11) salt; (12) bacon fat

(preserved with BHA and citric acid); (13) meat; (14) phosphoric acid; (15) sorbic acid (a preservative ); (16) calcium propionate (a preservative); natural and artificial smoke flavors; (17) Red 40; (18) Yellow 5; (19) Blue 1; (20) Yellow 6; and (21) added color.

20. Thus, the all important front PDP for the Beggin' Strips Original Bacon Flavor, as well as the back packaging, plainly convey the false and misleading impression that Beggin' Strips are predominantly made out of real pork bacon. Consumers who are looking to purchase a real bacon treat for their dogs are deceived by Defendant's misleading labeling into buying Beggin' Strips dog treat products that consist largely of processed wheat, corn, and soy, as well as water ("moisture" constitutes fully 26 percent of the product, according to the "Guaranteed Analysis" on the back of the packaging)  – hardly the premium real pork bacon ingredients that are touted on the PDP and rear packaging and for which the consumers purchase the products, and in any event, for which consumers pay a price premium.

21. The same type of false and misleading PDPs and back panel packaging are found on *all* the Beggin' dog treat products, specifically including, but not limited to, the Bacon flavor and Bacon & Cheese flavor Beggin' Strips that Plaintiff purchased for his dogs' consumption. Moreover, once a consumer opens the Beggin' package, she is presented with a product that is cut, shaped, colored, and textured to look like it is real bacon, and the product is flavored to smell just like real bacon.

22. Plaintiff purchased the products for his own personal use – i.e., consumption by his dogs as a real bacon treat. Plaintiff purchased the products because he believed, based upon the claims made on the products' packaging and PDPs and television commercials, that they were comprised mainly of real bacon, as highlighted on the packaging and commercials, and he paid a premium price for those products.

23. Plaintiff and the class members have been and will continue to be deceived or misled by Defendant's deceptive representations. Plaintiff purchased the dog treat products during the class period and in doing so, read and considered the products' PDPs and other packaging and based his decision to purchase the products on the representations made on the products' packaging, which is entirely consistent with Defendant's nationally-run television ads for the products which Plaintiff also has viewed. Defendants' representations and omissions were a material factor in influencing Plaintiff's decisions to purchase and have his dogs consume the Beggin' dog treat products.

24. Plaintiff and the class would not have purchased the Beggin' dog treat products, or paid the premium price they paid, had they known Defendant's representations on the product packaging and in its advertising are false and misleading.

25. As a result, Plaintiff and the class members have been injured in fact by their purchase of the products they were deceived into purchasing and for which they paid a premium price.

26. Defendant, by contrast, has reaped enormous profits from its false marketing and sale of the products.

## CLASS DEFINITION AND ALLEGATIONS

27. Plaintiff brings this action on behalf of himself and all other similarly situated consumers. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any class member or their pets may have suffered.

28. Plaintiff Kacocha brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class:

10

All consumers who, within the applicable statute of limitations period, purchased in the State of New York any of Defendant's Beggin' dog treat products. Excluded from the class are Nestlé, S.A., Nestlé Purina Pet Care Company, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Beggin' dog treat products for resale.

29. **Numerosity.** This action is appropriately suited for a class action. The members of the class are so numerous that joinder of all members of the class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed class contains thousands of purchasers of Beggin' dog treat products who have been damaged by Defendant's conduct as alleged herein. The precise number of class members is unknown to Plaintiff.

30. **Existence and Predominance of Common Questions of Law and Fact.** This action involves questions of law and fact common to the class. In marketing the Beggin' dog treat products, Defendant has engaged in an untrue and systematic course of misrepresenting the products to consumers. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant made false or misleading representations regarding the contents of the products;

- Whether Defendant represented that the products have significant quantities of ingredients – to wit, real bacon -- which they do not have;

- Whether Defendant represented that the products were of a particular standard or quality when they were not;

- Whether the claims made by Defendant regarding the products discussed above are true, or are misleading, or objectively are reasonably likely to deceive;

- Whether the alleged conduct constitutes violations of the law asserted;

- Whether Defendant engaged in false or misleading advertising;

- Whether the class members obtained the benefits that Defendant represented the products have;

11

- Whether Plaintiff and class members have sustained monetary loss and the proper measure of that loss; and

- Whether, as a result of Defendant's misconduct, the class is entitled to monetary and statutory damages, as well as equitable and injunctive relief.

31. **Typicality.** Plaintiff's claims are typical of the claims of the members of the class, because, *inter alia*, all class members have been injured through the uniform misconduct described above, and were subject to Defendant's deceptive representations, including the representations that accompany each and every label or packaging of the products (described in detail above) and were made on Defendant's websites and other advertising media. Moreover, the named Plaintiff's claims are typical of the class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the class.

32. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff Kacocha purchased at least the following Beggin' dog treat products: Beggin' Strips Bacon Flavor and Beggin' Strips Bacon & Cheese Flavor; and he relied upon the deceptive representations that were made in Defendant's marketing and advertising campaign, and on the labels on each and every package. As a result, Plaintiff has suffered an injury in fact as a result of Defendant's conduct, as did all class members who purchased the Beggin' dog treat products. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the class.

33. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually

impossible for a member of the class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Furthermore, even if the class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

34.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire class, and other equitable relief on grounds generally applicable to the entire class, to enjoin and prevent Defendants from engaging in the acts described. Unless a class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the class will have suffered damages.  Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the class and the general public will continue to be deceived.

35.     Defendant has acted and refused to act on grounds generally applicable to the class, making final injunctive relief appropriate with respect to the class as a whole.

## COUNT I

### (Violation of New York General Business Law Section 349)

36.     On behalf of himself and the members of the New York Class, as defined in Paragraph 28 above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 35 above.

37. Representing that its Beggin' dog treat products consist primarily of real bacon, Defendant has made false representations about the products, and so, the representations claimed are deceptive, and have the capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that their dogs are consuming a product primarily made of real bacon when they consume Defendant's Beggin' dog treat products. In reality, real bacon is just a miniscule ingredient in the products, which largely consist of processed wheat, corn, and soy grains, sugar, water, and artificial preservatives.

38. Defendant made, and makes, the false representation that its Beggin' dog treat products consist largely of real bacon with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the representation that the products consist mostly of real bacon.

39. Defendant has deceptively advertised, marketed, promoted, distributed, and sold its Beggin' dog treat products.

40. Plaintiff and the Class have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured in the amount of the purchase prices for the Beggin' dog treat products that they paid, or in the alternative, have been damaged by paying more for the Beggin' dog treat products that they purchased than for other products containing the same or similar ingredients.

41. Defendant continues to violate Section 349 of the New York General Business Law, and continues to aggrieve the members of the Class.

42. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages, and attorneys' fees and costs.

43. Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

2. On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

3. Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

4. Enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

5. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by on all issues so triable.

Dated:    White Plains, New York
          July 14, 2015

                                        Respectfully Submitted,


                                        /s/   Jeffrey I. Carton
                                        DENLEA & CARTON LLP
                                        Jeffrey I. Carton, Esq.
                                        Robert J. Berg, Esq.
                                        2 Westchester Park Drive, Suite 410
                                        White Plains, N.Y. 10604
                                        Telephone: (914) 331-0100
                                        Facsimile:  (914) 331-0105
                                        jcarton@denleacarton.com
                                        rberg@denleacarton.com